IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 24-CR-332 |
| v. ) | |
| ) | |
| NAHVARJ MILLS, ) | |
| ) | |
| Defendant. ) | |

## MOTION FOR JUDGMENT OF AQUITTAL, MOTION FOR NEW TRIAL, AND MOTION FOR MISTRIAL

Defendant Nahvarj Mills, through undersigned counsel, respectfully submits his supplemental motion for judgment of acquittal. In the alternative, he moves for a mistrial or new trial. The government failed to present sufficient evidence to obtain a conviction on Counts 1-10, 12-14, 16, 18-20, 21-27. Mr. Mills hereby incorporates the legal arguments made in his renewed motion for judgment of acquittal or in the alternative for mistrial filed on March 24, 2025, ECF Dkt. No. 68, as well as the factual and legal arguments made during argument before the Court prior to the verdict in this case. For those reasons and the reasons provided herein, Mr. Mills asks the Court to enter a judgment of acquittal on Counts 1-10, 12-14, 16, 18-20, 21-27.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 29(a) provides that a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). While a court considering a Rule 29 motion must "view[] the evidence most favorably to the government and accord[] the government the benefit of all *legitimate* inferences therefrom," *United States v. Weisz*, 718 F.2d 413, 437 (D.C. Cir. 1983) (emphasis added), the court may not permit a jury to render a guilty verdict based on "ambiguous evidence" from the

government, which encourages the jury to "engage in speculation." *Bailey v. United States*, 416 F.2d 1110, 1116 (D.C. Cir. 1969); *see also United States v. Preston*, 331 F. Supp. 457, 459 (D.D.C. 1971) ("[S]uspicion is not enough to permit the case to go the jury."). At the Rule 29 stage, the Court does not analyze whether there is a "visceral or moral" doubt about guilt, but whether there is "a doubt upon the record," whereby "the lack of essential proof creates the doubt as a legal matter." *Hiet v. United States*, 365 F.2d 504, 506 (D.C. Cir. 1966). That is, a court should "not indulge in fanciful speculation or bizarre reconstruction of the evidence," or "view the evidence through dirty window pains and assume that evidence which otherwise can be explained as equally innocent must be evidence of guilt." *United States v. Recognition Equip. Inc.*, 725 F. Supp. 587, 588 (D.D.C. 1989); *United States v. Morrow*, No. 04-cr-355, 2005 WL 1389256, at *3 (D.D.C. June 13, 2005). "If the evidence is such that reasonable jurymen must necessarily have such a doubt, the judge must require acquittal, because no other result is permissible within the fixed bounds of jury consideration." *Curley v. United States*, 160 F.2d 229, 232 (D.C. Cir. 1947).

Rule 33 provides that a court may vacate any judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a) In contrast to the standard on a motion for judgment of acquittal, in ruling on a motion for new trial, the Court need not accept the evidence in the light most favorable to the government. *United States v. Howard*, 245 F. Supp. 2d 24, 30 (D.D.C. 2003). Indeed, under Rule 33 a district court assesses the weight of the evidence sitting as a thirteenth juror. *Brodie v. United States*, 295 F.2d 157, 160 (D.C. Cir.1961) (district court has broad discretionary powers to grant motion for new trial); *United States v. Robinson*, 71 F. Supp. 9, 12 (D.D.C. 1947) (it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice,

even though there may be substantial evidence which would prevent the direction of a verdict. The exercise of this power is not in derogation of the right of trial by jury but is one of the historic safeguards of that right.); *see also United States v. Neill*, 964 F. Supp. 438, 441 (D.D.C.1997) (whether to grant a motion for a new trial is a decision committed to the Court's sound discretion).

Any error sufficient to require reversal on appeal is an adequate ground for granting a new trial. *See* 3 Wright, King & Klein, Federal Practice and Procedure 556 (3d ed. 2004). The burden of demonstrating that a new trial would be in the interest of justice rests with the defendant. *United States v. Mangieri*, 694 F.2d 1270, 1285 (D.C. Cir. 1982). To meet this burden, a defendant must show that (1) there was a substantial error and (2) the error affected the defendant's substantial rights. *See United States v. Walker*, 899 F. Supp. 14, 15 (D. D. C. 1995) (citing *United States v. Johnson*, 769 F. Supp. 389, 395-96 (D. D. C. 1991)); *see also Kotteakos v. United States*, 328 U.S. 750, 765 (1946) (the inquiry is whether the error itself had substantial influence). If the defendant shows that there was error, the burden shifts to the Government to prove that the error was harmless. *United States v. Pineda*, 592 F.3d 199, 201 (D.C. Cir. 2010).

## THE EVIDENCE AT TRIAL

The Court is well aware of the facts of this matter after having presided over a seven (7) day jury trial. The Court has also received and ruled on post-trial briefs. Mr. Mills was initially charged in Superior Court with 5 counts related to alleged shootings. The government then moved the case to federal court and overcharged him with a total of 27 counts to account for the flimsy evidence they had against him. During the trial, the government presented evidence from numerous witnesses,

including Mr. Mills' former romantic partners M.J., T.G., and A.H. Relatives of M.J., specifically her mother and sister, also testified for the government. The government also called a cooperating witness, Devin Roberts, and several law enforcement witnesses. Lastly, Mr. Mills testified in his own defense. The jury returned a compromised verdict finding Mr. Mills guilty on Counts 1-10, 12-14, 16, and 18-27, and not guilty on Counts 11, 15, and 17.

## ARGUMENT

The government did not present evidence sufficient for a reasonable jury to find the elements on Counts 1-10, 12-14, 16, 18-20, 21-27 were proven beyond a reasonable doubt. The government charged Mr. Mills with numerous offenses related to an alleged interaction with M.J. on December 30, 2023, shootings on January 21, 2024, January 22, 2024, and January 23, 2024, and disseminating nude photos of M.J. in January 2024. The testimony presented by the government witnesses was unreliable, inconsistent, and lacked corroboration.

### January 2024 Shootings

With respect to the alleged shootings on January 21, 2024, and January 22, 2024, the primary evidence the government relied upon was testimony from Devin Roberts. Mr. Roberts was charged along with Mr. Mills. Mr. Roberts initially denied any involvement and admitted to lying to law enforcement. Notwithstanding, the government elicited Mr. Robert's testimony to support the charges related to the January 21, 2024, and January 22, 2024 shootings. Mr. Roberts admitted to carrying out both shootings himself yet was sentenced to time served and has been released from custody for a year. Mr. Mills has been in custody for more than 2 years with the government seeking a 30-year sentence.

The unsubstantiated testimony of Mr. Roberts was insufficient to sustain a conviction for the offenses predicated on the January 21, 2024, and January 22, 2024 shootings. The government

4

did not present DNA evidence to corroborate that Mr. Mills was with Mr. Roberts during either of the shootings Mr. Roberts admitted to committing. Mr. Roberts claimed that Mr. Mills drove his truck during the shootings, yet there was no DNA evidence or fingerprints to corroborate that Mr. Mills was ever in Mr. Robert's truck. There was also no cell site data to corroborate that Mr. Mills was with Mr. Roberts when he committed the shootings. The government did not present any surveillance or other videos to show Mr. Mills and Mr. Roberts together before or after the alleged shootings. This is despite the testimony from Mr. Roberts that they were together for an extended period of time, including at two bars. No witness statements, receipts, or other corroboration was presented. The offenses related to these shootings rely almost exclusively on the testimony of Mr. Roberts.

In evaluating the credibility of a witness, details matter. Mr. Roberts is a convicted felon with a prior conviction for a violent crime involving a firearm who admitted to lying to law enforcement in connection with *this* case. In the case of Mr. Roberts, even putting aside the issues with his credibility and lack of corroboration, there are discrepancies that render his testimony wholly unreliable and unworthy of any credit. Mr. Roberts claimed that he was given a .40 caliber firearm by Mr. Mills to conduct the shootings on January 21, 2024, and January 22, 2024. However, when the scene of the alleged shooting was searched on January 22, 2024, 9mm shell casings were found. The trial testimony of Mr. Roberts portrayed a wild scene on January 21, 2024, where he shot repeatedly at the home of M.J., yet there was no 911 call. There was no damage to the property associated with this alleged shooting and no shells located on that date. This is despite the claim that there were multiple people inside the home, and it was located in a neighborhood. The only alleged damage from these two shootings was one bullet hole in the window. Mr. Roberts claimed he hit the window 6 times on January 22, 2024, but was such an

expert marksman that all 6 bullets went through the same hole. The alleged gunfire was also not captured on nearby ShotSpotter. The Court should enter judgment of acquittal on all counts related to the January 2024 shootings.

**December 30, 2023**

Mr. Mills was also convicted of several counts related to an alleged incident with M.J. on December 30, 2023. Specifically, M.J. claimed that Mr. Mills pointed a gun to her head. M.J.'s uncorroborated testimony is insufficient to support a conviction on the related counts and is entitled to no weight when the inconsistencies are taken into account. M.J. alleges that she met with Mr. Mills on December 30, 2023. They came to an understanding about the nature of their relationship going forward. She invited Mr. Mills to come inside. M.J. claims that Mr. Mills became enraged when she refused his sexual advances, and pointed a gun to her head. She claims he left shortly thereafter and did not interact with any of the other people inside the house, including her sister and other relatives.

This is not the first version of events M.J. has reported related to December 30, 2023. Prior to trial, M.J. reported that Mr. Mills pulled a gun on her *outside* of her house. She alleged that Mr. Mills arrived at her house waving a gun out of the window of his car. This was not captured on the Ring camera of her neighbors that captured other alleged events. She then pivoted and testified at trial to the alleged event occurring inside, in her room where there are no other witnesses. She also claimed that Mr. Mills left almost immediately after pointing the gun at her. The Ring camera of her neighbors did not show Mr. Mills leaving the house with a gun in his hand. At the time of this alleged encounter M.J.'s sister, L.J., was inside the residence. She testified at trial that she did not witness the events, but heard a commotion. Critically, L.J. said she heard M.J. and Mr. Mills in the same room before M.J. quickly left and went into another room in the house. L.J. went upstairs and

6

saw Mr. Mills getting ready to leave. She did not see a firearm in the room and saw that his hands were empty. The government also introduced a gun into evidence, one that was the same type as the one M.J. described during her testimony. The firearm, a revolver, did not have Mr. Mills' DNA on it. The Court should enter judgment of acquittal on all accounts related to allegations made by M.J., including the allegations on December 30, 2023.

### January 2024 Photos

Mr. Mills was charged with multiple offenses related to his alleged leaving lewd photos of M.J. on her property. The evidence used to support these charges consisted of grainy videos and testimony of Angel Hodges, a former romantic partner of Mr. Mills. Ms. Hodges denied assisting Mr. Mills, but she resembled an individual seen on video walking away from a vehicle that was consistent with her vehicle shortly before the alleged placing of photos on M.J.'s property. Ms. Hodges claimed she stayed in the car, but that is belied by the video evidence and a picture M.J. testified to during trial. The testimony of L.J. and another individual, Jeremiah Roberson, that they helped pick up the photos is uncorroborated. It is probable, if not likely, that M.J. picked up all the photos before they were seen by a third party. The statute for which Mr. Mills was charged, D.C. Code § 22-3053, required publication to 6 or more people. At most, there was alleged evidence to show 3 people picked up the pictures, yet there is no video evidence of this. This uncertainty results in a finding that the evidence presented at trial was insufficient to sustain a conviction on the related counts. The Court should enter judgment of acquittal on all related counts.

### Charges Predicated on Protection Order

A significant number of the charges against Mr. Mills allege offenses that are predicated on the violation of a protection order. Specifically, Counts 1, 3, 4, 5, 6, 7, 8, 9, 10 are offenses that are based on alleged violations of a protection order. As the charges imply, Mr. Mills is alleged to have

committed the offenses in violation of an active and valid protection order. At trial, there was testimony about efforts to serve Mr. Mills with a temporary protective order. It appears that Ebony Johnson, M.J.'s mother, was referring to a temporary protection order, and efforts to serve Mr. Mills with those documents on January 16, 2024:

```
2    Q.   Okay.  And similarly when you went with your
3         brother to Mr. Mills' home, what day was that?
4    A.   January 16th.
5    Q.   Okay.  And the day that you had tried to meet up
6         with Mr. Mills at that 1000 First Street address, what
7         date was that?
8    A.   January 16th.
9    Q.   So is it fair to say that you were trying to give
10        this temporary protective order and communicating with
11        Mr. Mills all on that same day?
12   A.   Correct.
13   Q.   Okay.  And then the message is, there's a date on
14        January -- listed on these messages for Government's
15        Exhibit 101A.  Is it fair to say that was also the day
16        you were communicating these messages to Mr. Mills?
17   A.   Yes.
18   Q.   Okay.
19            MR. CROCETTI:  And now go back to Government's
20        Exhibit 101B.  And going to the first exhibit -- or
21        first page.
22   BY MR. CROCETTI:
23   Q.   And so this was the message that you had sent, the
24        temporary protective -- or so you had sent documents to
25        Mr. Mills.  Were those also text messages you sent on
```

```
1     January 16th?
2     A.   Yes.
3     Q.   Okay.  And you had mentioned that you had mailed
4     through certified mail to Mr. Mills.  Had you
5     mentioned -- I'm sorry, had you mailed those documents
6     any other way?
7     A.   What you mean?
8     Q.   I'm sorry.  Besides certified mail, did you mail
9     the documents in any other way.  Normal way?
10    A.   I sent it regular mail, I sent it certified mail.
11    And I did it certified so that I could try to track it.
12    Q.   All right.  And do you remember the results of that
13    tracking?
14    A.   I know the last time I checked it it said nobody
15    answered the door.  It wasn't delivered at the time.
```

Dec. 11. 2024 (PM) Tr. at P. 69-70.

      The lead case agent, Matthew Fox-Moles, was asked whether Mr. Mills was served with the temporary protection order or civil protection order. Agent Fox-Moles was not aware of Mr. Mills being served, and referred to efforts by Ebony Johnson:

> Well, in your investigation, have you seen, in the docket for the CPO or the TPO, any affidavit that was submitted in support of the contention that Mr. Mills had ever been served?
> 
> **A.** I don't recall seeing it in the docket. I do think I may have seen it provided by Ms. Johnson.

The trial record does not establish that Mr. Mills was validly served with any protection order at the time of the alleged offenses that are predicated on the existence of a protection order. Without

9

a valid and enforceable protection order, and Mr. Mills being served and aware of the same, Mr. Mills could not be convicted of these offenses. The Court should enter judgment of acquittal on all counts that included an alleged violation of a protection order.

### Weapon Possession Charges Arising from January 23, 2024

The jury returned inconsistent verdicts related to the weapons charges arising from the events of January 23, 2024, including Counts 10 and 14. In short, the jury's verdict indicated that they determined that the government failed to prove beyond a reasonable doubt that Mr. Mills committed the shooting at M.J.'s residence on January 23, 2024. This is evident through the acquittal on Counts 11, 15, and 17. The acquitted counts all relate to alleged conduct on January 23, 2024, that involve the use of a firearm and possessing it during a crime of violence. Notwithstanding acquitting Mr. Mills of the charge that alleges he committed the alleged shooting on January 23, 2024 (Count 17) and possessing a gun during the alleged shooting (Count 15), the jury convicted him of possessing the gun on January 23, 2024 (Counts 11, 14). Mr. Mills was not arrested on January 23, 2024 and there was no video or other evidence showing him in possession of a firearm on that day. The fact that Mr. Mills was acquitted of the shooting but convicted of the possession and use requires acquittal. *United States v. Daigle*, 149 F.Supp. 409, 414 (D.D.C. 1957) ("where a guilty verdict on one count negatives some fact essential to a finding of guilty on a second count, two guilty verdicts may not stand."). The Court should judgment of acquittal on all counts related to the January 23, 2024 allegations.

### Mistrial

The Court allowed the introduction of evidence that warranted a mistrial. "A mistrial is warranted if inadmissible evidence is erroneously presented to the jury that is so "highly prejudicial" that the jury cannot reasonably be expected to ignore it." *United States v. Crews*, 856

F.3d 91, 96 (D.C. Cir. 2017) (citing and quoting *United States v. Eccleston*, 961 F.2d 955, 961-62 (D.C. Cir. 1992). "The single most important consideration in ruling on a motion for a mistrial is the extent to which the defendant was unfairly prejudiced." *United States v. McLendon*, 378 F.3d 1109, 1112 (D.C. Cir. 2004). Here, evidence that fits this exacting standard was improperly admitted—the firearm belonging to Mr. Mills' grandfather.

M.J. alleged that Mr. Mills possessed a firearm on December 30, 2023, and pointed it at her head. There was no corroboration for her allegation. She did not call 911. As noted above, M.J.'s sister saw Mr. Mills in the house after the alleged event, and he did not have a weapon. In an effort to improperly bolster this otherwise unsupported claim, the government presented a box with a revolver during the testimony of M.J. The clear intention was to suggest to the jury that the firearm in the box was the same one that Mr. Mills allegedly possessed on December 30, 2023. M.J. testified it appeared to be "similar" in that it is was consistent with a revolver. This was wholly improper. All revolvers have the same components and appear similar. The firearm used by the government was owned by Mr. Mills' grandfather, a former member of the Metropolitan Police Department, and never in the possession of Mr. Mills. *See* ECF Dkt. No. 68-1.

There was no basis to make a connection between the firearm presented at trial and M.J.'s allegation. Instead, the government was allowed to present evidence of a gun that was owned by a relative of Mr. Mills and left with the impression it was the one M.J. testified Mr. Mills possessed and used on December 30, 2023. Combined with the numerous photos of Mr. Mills possessing other guns, this constituted unfair prejudice. *United States v. Ausby*, 436 F.Supp 3d 134, 153 (D.D.C. 2019) (Unfair prejudice under Rule 403 means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one) (internal citations and quotations omitted). The improper inference created with the admission of the firearm unfairly

prejudiced Mr. Mills and requires the Court to declare a mistrial as to all counts.

The government was also allowed to introduce evidence related to alleged conduct in Virginia that substantially prejudiced Mr. Mills. Specifically, the government presented testimony from T.G., a former romantic partner of Mr. Mills. There was no evidence presented at trial that Mr. Mills was in the District of Columbia when the alleged cyberstalking took place. This is despite the fact that during a hearing on a motion to sever the charges related to T.G. the government represented that it would present cell site data at trial showing that Mr. Mills was in the District of Columbia when he committed the alleged acts. No such evidence was presented. The government also was allowed to improperly elicit testimony about non-cyber allegations against Mr. Mills, including showing up at her house. The testimony of T.G. was used to demonize Mr. Mills and show that he has a propensity to commit acts similar to the allegations made by M.J. The Court should declare a mistrial as to all counts.

## CONCLUSION

For the foregoing reasons, those stated during oral argument on the Rule 29 motion during trial, in the arguments raised in the renewed motion for judgment of acquittal or mistrial, and the arguments made on May 8, 2025, and any others the Court finds, Mr. Mills asks the Court to enter judgment of acquittal Counts 1-10, 12-14, 16, 18-20, 21-27.

Respectfully Submitted,

/s/
Marc Eisenstein
Coburn & Eisenstein PLLC
1200 G Street NW, 8th Floor
Washington, DC 20005
Phone: (703) 963-7164
Fax: (866) 561-9712
marc@coburngreenbaum.com

*Counsel to Defendant*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 6, 2026, a copy of the foregoing was filed with the Clerk of the Court and served on all counsel of record via e-mail.

___/s/_____
Marc Eisenstein
